Shearer, J.
This is a proceeding in quo warranto to ascertain by what authority tbe defendant Robert Thompson, assumes to exercise the functions and discharge the duties pertaining to the office of County Recorder of Franklin County.
From the admitted facts as well as from the pleadings, it is made to appear that the defendant, at the November election for 1891, was duly elected to the office of county recorder for the term of three years from and after the first Monday of January, 1892; that on that day he duly qualified as such officer and entered upon the discharge of his duties.
On the twenty-first day of March, 1894, the general- assembly, by amendment to the statute then in force, provided that the term of office of county recorders should begin on the first Monday of September next after his election ; thus changing the beginning of his term from the-first Monday of January to the first- Monday of September next after his election.
On the twenty-seventh day of November, 1894, and during the term of office of said defendant, to which he had been elected as aforesaid, the Board of County Commissioners of Franklin .County, composed of Messrs. Cassidy, Biggert and *163 McDonald, in anticipation of the vacancy which would occur in the office of the county recorder on the seventh day of the following January, by reason of the expiration of the term of the defendant, by unanimous vote of the members of said board, appointed the defendant county recorder from said seventh day of January, being the first Monday of said month, to the first Monday of September, 1895. Thereupon the defendant qualified by giving bond and taking the oath of office, and afterwards, on the fourth day of January, 1895, presented a certificate of such appointment and qualification to the secretary of state and demanded that the same be filed in his office and a commission issued to him in accordance therewith, which was refused.
At said November election, in the year 1894, James Wilson Peters was duly elected county recorder of Franklin county for the term of three years, commencing on the first Monday of September, 1895, and at the same election George Bellows was elected a member of the board of county commissioners of said county for a term of three years from and after the third Monday of September, 1895, to succeed Mr. Cassidy, whose term expired on the sixth day of January, 1895.
On the seventh day of January, 1895, the probate judge and county auditor, being a majority of the persons authorized by law to fill the vacancy in the board of county commissioners, declared a vacancy in said board to exist by reason of the expiration of the term of said Cassidy, and appointed said Bellows, member elect of said board, a member of said board from the seventh day of January to the third Monday of September next following, and, said Bellows having qualified by giving bond and taking the oath of office, there was delivered to him a certificate of such qualification, upon which he received from the proper authority a commission as member of the board of county commissioners for said period.
At a meeting of the board of county commissioners held on the seventh day of January, 1895, after the appointment and *164 qualification of said Bellows, and at which he was present as a member of said board, by the votes of said Bellows and said McDonald, said Peters was appointed recorder of said county from that day, being the first Monday of January, 1895, to the first Monday of September, 1895; and having duly qualified, said Peters demanded of the defendant possession of the recorder’s office and the records thereof, and said demand was refused, and thereupon this proceeding was instituted.
That the term of office of Cassidy, as a member of the board of county commissioners, and of the defendant as county recorder, expired at midnight on the sixth day of January, 1895, being.the day preceding the first Monday of that month, admits of no doubt.
Section two, article ten, of the constitution, provides that : “County officers shall be elected on the first Tuesday after the first Monday of November, by the electors of each county in such manner, and for such term, not exceeding three years, as may be provided by law.”
Pursuant to this requirement the general assembly enacted (Revised Statutes, section 839) that: “The board of county commissioners consists of three persons, one of whom shall be chosen every year, and shall hold' his office for three years, commencing on the first Monday in. January next after his election.” Also, “ There shall be elected, triennially, in each county, a county recorder, whose term of office shall be three years, beginning on the first Monday of January next after his election.” (Revised Statutes, section 1137.)
These are the provisions of the statutes which were in force when Cassidy and Thompson were respectively elected, and determine the duration of their terms of office.
Having commenced their terms of office on the first Monday of January, 1892, the three years were fully completed and ended at the close of the day preceding the first Monday of January, 1895.
On the twenty-first day of March, 1894, the foregoing provision concerning the election of county recorder was amended *165 as follows: “ Section 1137. There shall be elected triennially, in each county, a county recorder, whose term of office shall be three years, beginning on the first Monday of September next after his election.” 91 Ohio Laws, 80.)
. So that when the term of Thompson expired, a vacancy in his office occurred by reason of the postponement of the time of the commencement of the term of his’successor, and the question is presented whether said appointment of November twenty-seventh to fill said vacancy is valid.
In the first place, it is contended that the amendment of section 1137, changing the time of the beginning of the term of the county recorder, operated to causea vacancy in his office ; and that at the time the board of county commissioners, made said appointment, November 27, 1894, there was an existing vacancy, which said board had authority to fill.
Among the cases cited as sustaining these views are 9 Colorado, 631 ; 11 Colorado, 138; 20 Ohio St. 252, 8 Indiana, 345 ; 87 Pa. St. 419.
None of these cases establishes the proposition stated.
In 9 Colorado, the supreme court, construing a proposed amendment to a statute changing the time of the commencement of the term of county treasurers, similar to the present section 1137 of our Revised Statutes, said, “ the effect of the change was to leave a vacancy extending from the date of the expiration of the term * * * as now fixed by law and the date of the commencement of the term as fixed by this act.”
This is not deciding that a vacancy occurred and existed eo instante the act was passed. The court simply declared that a vacancy would arise at the expiration of the term of the incumbent of the office. The contention of counsel is an unfair treatment of the language of the court. Indeed, it is not sustained by the next authority cited — 11 Colorado, 139. There it is said that the act “operated to create a vacancy in the office between the dates mentioned upon the expiration of the terms of the present incumbents,” etc. Manifestly the Colorado court entertained views quite different from those advanced by counsel.
*166 The State ex rel. v. Cook, 20 Ohio St. 252, is not in point. The court did not hold .that there was a “vacancy” in the office, but assumed it for the sake of illustration.
Nor are the other cases above cited helpful in this discussion ; neither have we found any case which sustains the claim of counsel.
As before stated, the offices of county recorder and county commissioner became vacant at midnight of January 6, 1895, and not before; and the board of county commissioners had no power to fill the vacancy before it happened ; certainly not, unless it was certain to happen while the board as constituted was certain to be in office when the vacancy should occur.
This is the doctrine in Ohio v. Choate, 11 Ohio, 511. Says the court: “ Whatever may have been the practice of other states, we know that * * * it has been the practice of the general assembly to provide for vacancies that are likely to happen during the term of office of the persons composing their own body, * * * the legislature of this state has the right, at its regular session, to fill an elective office in all cases where a vacancy is to happen prior to the ensuing annual meeting of the general assembly.”
Rieter v. The State, (31 W. L. B. 217, 51 Ohio St. 74), decides that the resignation of the mayor took effect and created a vacancy at the date fixed thereb}r, and not when it was accepted, as would be the case at common law. It sheds no light on the present inquiry.
In Ohio v. McCollister, 11 Ohio, 50, there is a dictum to the effect that the general assembly, when the appointment of an officer was vested in it and it was known that a vacancy would occur, either during the session or.within a short period thereafter, might appoint, or elect, a person to fill such vacancy before it actually occurred. But Judge Hitchcock limited this power to vacancies which should occur “ prior to the next succeeding session ” of the legislature.
It is very doubtful, however, whether an appointment can *167 be made in anticipation of a vacancy in the office of recorder or commissioners, in view of the provisions of our statutes.
The second clause of section 842, Revised Statutes, provides: “And when a vacancy happens * * * and the interest of the county requires the vacancy be filled before the election, the probate judge, auditor and recorder of the county, or a majority of them, shall appoint a commissioner,” etc.
And as to a vacancy in the office of recorder, section 1142, Revised Statutes, provides: “In case of vacancy in the office of recorder, the commissioners shall appoint a suitable person to fill the vacancy,” etc.
These enactments plainly indicate that no appointment can be made until a vacancy actually happens; until the office is without an incumbent. Robbins v. Com’rs, 2 O. C. C. Rep., 25 ; State v. Hopkins, 10 Ohio St. 5 & 9.
In the language of Spear, S., in State v. McCracken, 51 Ohio St. —, (31 W. L. B. 216): “ In contemplation of law there can be no vacancy in an office so long as there is a per-, son in possession of the office legally qualified to perform the duties.”
Mr. Mechem, in his work on Public Officers, section 133, says : “ A prospective appointment to fill an anticipated vacancy in a public office, made by the person or body which, as then constituted, is empowered to fill the vacancy when it arises, is, in the absence of express law forbidding it, a legal appointment, and vests title to the office in the appointee * * * “But,” he says, “the appointing power cannot forestall the rights and prerogatives of their own successors by appointing successors to offices expiring after their power to appoint has itself expired.” “ It is plain * * * that an appointment thus made by anticipation has no other basis than expediency and convenience, and can only derive its binding force and effect from the supposition that there will be no. change of person and consequently of will, on the part of the *168 appointing power between the date of the exercise of that power by anticipation, and that of the necessity for the exercise of such power by the vacancy of the office.”
F. A. Davis, S. A. Webb and Tod B. Galloway, for plaintiff.
J. E. Sater, J. T. Holmes and G. G. Williams, for defendant.
So that under this doctrine, and assuming that the commissioners had power to make a prospective appointment, they could not do so where the vacancy would occur after a change had taken place in their own constituency.
At the time of the attempted appointment of the defendant by the commissioners it was known that when his office should become actually vacant, the personnel of the board would be changed by the expiration of the term of Mr. Cassidy. For that reason, in addition to the others we have stated, the board had no power to make his appointment of November twenty-seventh, 1894.
It is gratifying to notice that the decisions of the courts upon this question are uniformly in accord with the suggestions of propriety and decorum. It would be indecorous that persons officially moribund should, by the exercise of powers testamentary in their nature, prolong their power beyond the terms of their official lives.
Judgment of ouster and induction.